UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENITA VAN HOUTEN,<br><br>       Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security<br><br>       Defendant. | Case No.: 1:17-cv-01238 - JLT<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT, NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF BENITA VAN HOUTEN |

Benita Van Houten asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the ALJ erred in reviewing the record and concluding she can perform her past relevant work. Because the ALJ applied the proper legal standards and the ALJ's findings are supported by substantial evidence in the record, the administrative decision is **AFFIRMED**.

## **PROCEDURAL HISTORY**

On April 5, 2016, Plaintiff filed her application for benefits, alleging disability beginning February 29, 2016. (Doc. 10-7 at 2) In her application, Plaintiff she was disabled due to scoliosis and depression. (Doc. 10-4 at 5) The Social Security Administration denied the applications at both the initial level and upon reconsideration. (Doc. 10-3 at 16) After requesting a hearing, Plaintiff testified before an ALJ on February 9, 2017. (*Id.* at 29, 48) The ALJ determined Plaintiff was able to perform her past relevant work and other work in the national economy, and issued an order denying benefits

1

on May 19, 2017. (*Id.* at 16-24) Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied the request on July 26, 2017. (*Id.* at 2-4) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to show the claimant is able to engage in other substantial

gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

**ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§404.1520, 4126.920(a)-(f). The process requires the ALJ to determine whether the Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416. 927.

## A.    Relevant Medical Evidence[1]

In December 2015, Plaintiff reported she had headaches, "blurry vision with nausea and dizziness." (Doc. 10-9 at 11)  Isabell Lee, FNP, noted that Plaintiff was "nervous/anxious." (*Id.* 18-19)  Ms. Lee opined Plaintiff's psychiatric and behavioral exam was "[n]egative for depression and suicidal ideas." (*Id.* at 18)  She diagnosed Plaintiff with a tension headache and anxiety, and prescribed Citalopram (Celexa) to Plaintiff. (*Id.* at 19)

In February and March 2016, Plaintiff continued to report headaches with associated nausea, blurred vision, and dizziness. (Doc. 10-9 at 24, 29)  Ms. Lee indicated Plaintiff's psychiatric exam remained "[n]egative for depression and suicidal ideas," but Plaintiff was "nervous/anxious." (*Id.* at 24, 30)  Ms. Lee noted Plaintiff had an appointment pending with optometry in March. (*Id.* at 29)

In April 2016, Ms. Lee noted Plaintiff reported "no blurred vision, coughing, dizziness, eye pain, eye redness or photophobia." (Doc. 10-9 at 39)  Ms. Lee observed that Plaintiff remained "nervous/anxious." (*Id.* at 40)  She opined Plaintiff's anxiety was stable. (*Id.* at 41, 46)

In June 2016, Plaintiff was evaluated by Grant Bailey, NP, following an emergency room visit for urinary retention. (Doc. 10-9 at 92)  Mr. Grant observed Plaintiff was "oriented to person, place, and time and well-developed, well-nourished, and in no distress." (*Id.* at 93)  He believed Plaintiff's

---

[1] The Court has reviewed the entirety of the medical record.  However, Plaintiff's challenge to the ALJ's step two findings and residual functional capacity related to her mental impairments. (*See generally* Doc. 14)  Accordingly, the summary focuses on evidence related to Plaintiff's mental impairments.

"[m]ood, memory and judgment [were] normal." (*Id.* at 93) Mr. Grant observed that Plaintiff was anxious, which he attributed to her inability "to sit still from left sided sciatica." (*Id.*) Plaintiff continued to take Citalopram for depression. (*Id.* at 94)

Dr. Ekram Michiel performed a psychiatric evaluation on July 22, 2016. (Doc. 10-9 at 52) Plaintiff told Dr. Michiel that "in 1995 her ex-husband and his mother lied to the Child Protective Services and as a result [her] children were taken away," and she had "not been able to get them back." (*Id.*) Dr. Michiel noted Plaintiff also reported "she cut her wrists in 1998 and went to the PACT Unit for 72 hours," after which "she did not have follow-up with mental health." (*Id.* at 53) Plaintiff told Dr. Michiel she felt depressed, slept a lot, was not eating, cried easily, and did not go outside. (*Id.* at 52) She also described feeling "nervous, intense and anxious around people." (*Id.*) Dr. Michiel opined that his "[p]robing questions did not reveal cluster features of post-traumatic stress disorder," although Plaintiff indicated she had a history of "very abusive" relationships. (*Id.* at 53) She described needing surgery after being hit in the eye in 2000, being stabbed in the chest in 2003, "being abused by her mother and being molested by her stepfather." (*Id.* at 53) Plaintiff also told Dr. Michiel that she was "able to take care of her personal hygiene," as well as "cook and do household chores with help from a friend." (*Id.*)

Dr. Michiel observed that Plaintiff "kept fair eye contact throughout the interview," though her "[a]ffect was restricted, sad." (Doc. 10-9 at 54) Plaintiff's "[s]peech was normal in process with slight latency." (*Id.*) Dr. Michiel found Plaintiff "was able to do digit span five out of five forward and backwards correctly;" "able to recall three out of three items immediately and after five minutes;" and "appeared able to do simple math calculations." (*Id.*) Dr. Michiel diagnosed Plaintiff with "[d]epressive disorder not otherwise specified" and opined:

> Based upon the evaluation and observation throughout the interview, I believe that the claimant is able to maintain attention and concentration to carry out simple job instructions.
>
> The claimant is unable to relate and interact with coworkers, supervisors and the general public.
>
> The claimant is unable to carry out an extensive variety of technical and/or complex instructions.

(*Id.* at 54-55) Dr. Michiel believed Plaintiff's stressors included social stress and her health condition,

and gave her a GAF score of 55.[2]  (*Id.* at 55)

On August 12, 2016, Plaintiff had a neurology consultation regarding her back pain.  (Doc. 10-9 at 65)  Dr. Singh observed that Plaintiff did not exhibit any signs of abuse, and Plaintiff reported she did not have any thoughts of harming herself or others.  (*Id.* at 66)  Plaintiff also told Dr. Singh she did not feel unsafe at home.  (*Id.*)  Dr. Singh opined that Plaintiff "[d]emonstrated good judgment and reason and normal affect during [the] examination."  (*Id.* at 67)

Dr. C. Lawrence reviewed Plaintiff's medical record and the consultative examination findings of Dr. Michiel on August 12, 2016.  (Doc. 10-4 at 8)  Dr. Lawrence noted that records from Plaintiff's primary care physician referred to anxiety and depression, for which Celexa was prescribed, but the records did "not contain a detailed description of psychiatric symptoms or mental status findings and observations."  (*Id.*)  In addition, Dr. Lawrence opined the examination findings from Dr. Michiel did "did not reveal any cognitive impairment or difficulty with attention and concentration."  (*Id.*)  Further, Dr. Lawrence found the consultative "report contain[ed] no findings or observations of such restricted ability to interact with others" as Dr. Michiel opined.  (*Id.*)  Dr. Lawrence observed that Plaintiff reported she was "nice to authority figures, has friends who come visit her, [and] goes out with a friend."  (*Id.*)  Thus, Dr. Lawrence gave "no weight" to the opinions of Dr. Michiel concerning Plaintiff's concentration and ability to interact with coworkers, supervisors, and the public. (*Id.*)  Dr. Lawrence opined Plaintiff had a mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation of extended duration.  (*Id.* at 7-8)  Dr. Lawrence concluded Plaintiff's reported mental impairment was non-severe.  (*Id.* at 8)

On August 23, 2016, Plaintiff visited an emergency room for numbness in her legs.  (Doc. 10-9 at 73-74)  Dr. Brian Horan noted Plaintiff's medical history included depression and PTSD.  (*Id.* at 74)  He determined Plaintiff was "oriented to person, place, and time" and did not appear in distress. (*Id.*)  Dr. Horan also indicated Plaintiff had "a normal mood and affect."  (*Id.* at 75)

---

[2] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV).  A GAF score of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)."  *Id.* at 34.

In September 2016, Mr. Grant observed that Plaintiff was "oriented to person, place, and time and well-developed, well-nourished, and in no distress." (Doc. 10-9 at 106; Doc. 10-10 at 12)  In addition, he observed that Plaintiff's "[m]ood, memory, affect and judgment [were] normal."  (*Id.*)

Plaintiff began treatment with Alpha Behavioral Counseling Center on October 13, 2016.  (Doc. 10-10 at 22)  She was transferred to the care of Dr. Reshale Thomas in November 2016.  (*Id.*)

Dr. Mark Gilson reviewed Plaintiff's records on November 15, 2016, and opined the additional evidence related to reconsideration of Plaintiff's application "show[ed] good judgment" and normal affect, memory, and mood.  (Doc. 10-4 at 22)  According to Dr. Gilson, there was "no evidence of worsening" of Plaintiff's mental health.  (*Id.*)  He determined that Plaintiff had mild restrictions with her activities of daily living; mild difficulties with social functioning; mild difficulties with maintaining concentration, persistence, or pace; and one or two episodes of decompensation.  (*Id.* at 21-22)  Dr. Gilson affirmed the decision of Dr. Lawrence that Plaintiff's mental impairment was non-severe.  (*Id.* at 22)

In January 2017, Dr. Thomas wrote a letter to Plaintiff's counsel in which she reported that Plaintiff "had attended 9 individual face-to-face therapy sessions, primarily on a weekly basis."  (Doc. 10-10 at 22)  Dr. Thomas diagnosed Plaintiff with "Major Depressive Disorder, Recurrent, Severe Without Psychotic Features and Post-traumatic Stress Disorder, Unspecified."  (*Id.*)  Dr. Thomas indicated these diagnoses were "based upon [Plaintiff's] reported history and mental status examination from the initial interview with her clinician"; Plaintiff's "reports in current sessions"; Dr. Thomas' own observations in sessions; and consultations with Dr. Catherine Pou, the clinical supervisor.  (*Id.*)  According to Dr. Thomas, Plaintiff was "engaged and compliant in treatment," but was "having difficulty working toward symptom reduction," "due to her issues with chronic pain and stress level."  (*Id.*)  She believed Plaintiff's "prognosis for recovery of mental health symptoms [would] likely exceed 12 months."  (*Id.*)  She noted: "Per Bonita's report, both physical and mental health symptoms have impaired her ability to work."  (*Id.*)  However, Dr. Thomas indicated she was "unable to provide a substantiated opinion on whether [she would] find Bonita fit for fulltime employment since disability assessment at the time of admission was not part of the treatment plan."  (*Id.*)

///

**B.      Disability Report**

Plaintiff submitted a "Disability Report- Form SSA 3368" as part of her application.  (Doc. 10-8 at 5-11)  She indicated that she stopped working due to depression.  (*Id.* at 6)  Plaintiff reported she previously worked "[s]howing and leasing apartments."  (*Id.* at 7-8)  According to Plaintiff, the job did not require her to use machines, tools, or equipment.  (*Id.* at 8)  Plaintiff estimated that each day she was required to walk four hours, stand for six hours, sit for four hours, and climb for two hours.  (*Id.*)  Plaintiff indicated she had to write, type, or handle small objects for six hours; and she spent "0" hours reaching.  (*Id.*)

**C.      Plaintiff's Hearing Testimony**

On February 9, 2017, Plaintiff appeared at an administrative hearing to testify before an ALJ.  (Doc. 10-3 at 32)  She reported she is right-handed.  (*Id.* at 37)  Plaintiff said she was unable to lift her left arm over her head.  (*Id.* at 43, 45)  Plaintiff stated it was "just hard to put over [her] head" and she could "hardly brush [her] hair."  (*Id.* at 45)  She explained she also could not "really reach too far" with her left arm, including "reaching… like across the table to grab something."  (*Id.*)  In addition, she said she needed assistance dressing with her "lower half."  (*Id.* at 38)

Plaintiff said that when living in a home, her husband did most of the chores, and she did not cook or do dishes.  (Doc. 10-3 at 39, 49)  When asked about folding clothes, Plaintiff said she could "fold stuff, but it's kind of hard with one arm."  (*Id.* at 49)

Plaintiff testified she had "depression for a very long time," and it "seem[ed] to have gotten worse when [she] started getting, feeling the pain and everything."  (Doc. 10-3 at 43)  She said she cried "all of the time," and could not pay attention while watching television or reading.  (*Id.*)  Plaintiff stated that she "could be watching something on TV and then [her] mind will just go somewhere and [she would] just start crying for no reason."  (*Id.* at 47)  She estimated that this occurred "for or five" days each week, and each crying spell would "last a pretty long time, probably like 30, 40 minutes or so, maybe an hour."  (*Id.*)

She reported that she stayed by herself "all the time," and did not "have very many friends."  (Doc. 10-3 at 44)  Plaintiff testified she would "get really nervous when… around people, too many people."  (*Id.* at 47)  Plaintiff reported that she was attending therapy once a week, and was taking

Celexa and Hydrozyzine. (*Id.* at 44) Plaintiff believed the medication helped "a little." (*Id.*)

Plaintiff testified that she attended some vocational classes, and earned certificates in "[p]rofessional office administration, accounting, and … a nail technician degree." (Doc. 10-3 at 38) She reported that she worked in leasing apartments, and her job requirements involved showing the apartments, doing paperwork, and taking rent. (*Id.* at 39) Plaintiff believed she was able to manage funds without assistance. (*Id.* at 44)

## D. Vocational Expert Testimony

Susan Creighton-Clavel, a vocational expert ("the VE") reported that she reviewed Plaintiff's work history exhibits. (Doc. 10-3 at 50) Using the *Dictionary of Occupational Titles*[3], the VE classified Plaintiff's past work as an apartment manager, DOT 186.167-018. (*Id.*) She explained this was light work, with an SVP level of 5.[4] (*Id.*)

The ALJ asked the VE to "assume a hypothetical person of the same age, education and work background." (Doc. 10-3 at 50) In addition, the ALJ asked the VE to consider an individual who "could lift and carry 20 pounds occasionally, ten pounds frequently[;] sit, stand or walk six to eight hours with occasional stoop, crouch, crawl, climb, kneel and balance, with no climbing ladders, ropes or scaffolds[;] and occasional overhead reaching with the left upper extremity." (*Id.*) The VE opined a person with such limitations would be able to perform Plaintiff's past relevant work. (*Id.*)

Second, the ALJ asked the VE to consider an individual with the same limitations, "except the standing and walking … [was limited to] four hours." (Doc. 10-3 at 50) The individual would remain able to sit six to eight hours. (*Id.* at 51) The VE testified, "the job [Plaintiff] had would still remain… [a]nd there are other jobs, as well." (*Id.* at 51)

Next, the ALJ asked the VE to consider the limitations in the second hypothetical, "with a standing and walking [limit] at four, but add that this person needs a sit/stand option where they're

---

[3] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).

[4] "SVP" is the "specific vocational preparation," which indicates "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1231, n. 4 (9th Cir. 2009) (quoting *Dictionary of Occupational Titles*, Appendix C, p. 1009 (4th ed.1991)). SVP 5 means the job takes "over 6 months up to and including 1 year." *Dictionary of Occupational Titles*, Appendix C, p. 1009.

changing at will, but no more than hourly." (Doc. 10-3 at 51)  In addition, the ALJ indicated the hypothetical individual was limited to "only occasional reaching in any direction with the upper left extremity, which is the non-dominant [arm]." (*Id.*)  The VE responded: "Well, as the apartment manager she can do that job with, primarily with her dominant hand… [s]o that job would still remain." (*Id.*)  The VE reported this job also had "a sit/stand option." (*Id.*)

Fourth, the ALJ asked the VE to consider an individual with all the prior limitations, who "need[ed] an additional two to four breaks of 30 minutes per day," or "up to an additional two hours a day of breaks." (Doc. 10-3 at 51)  The VE testified that "apartment manager is one of those jobs that does offer a lot of flexibility," and opined person with these additional limitations would be able to perform Plaintiff's past relevant work.  (*Id.*)

Next, Plaintiff's counsel asked the VE to consider a person "with the same limitations[] outlined in Hypothetical Number 4, except this hypothetical individual would be limited to simple routine tasks." (Doc. 10-3 at 52)  The VE opined such a person could not perform Plaintiff's past relevant work because it was "skilled employment." (*Id.*)

The VE reported her testimony was consistent with the *Dictionary of Occupational Titles*, but explained she "had to add to the *DOT*, which doesn't address a sit/stand option [and] doesn't address additional breaks or absences." (Doc. 10-3 at 52-53)  She explained that these opinions were "based on [her] training and experience." (*Id.* at 53)

**E.      Third Party Statements[5]**

Three friends of Plaintiff—Christina Gallo, Cassandra Martin, and Marlene Dimmick— submitted reports or statements in support of her application for benefits.  (*See* Doc. 10-2 at 2; Doc. 10-8 at 29-36, 69-70)  In addition, her husband Richard Bowman wrote a letter in support of the application.  (Doc. 10-8 at 68)

As noted by the ALJ, in completing the Third Party Function Report, Ms. Gallo reported that Plaintiff "drives, online shops, and is able to handle her finances." (Doc. 10-3 at 19)  In addition, she indicated that Plaintiff could follow written and spoken instructions well (Exhibit 5E)." (*Id.* at 21)

---

[5] The ALJ gave "little weight" to the third-party reports (Doc. 10-3 at 22), and Plaintiff does not challenge the ALJ's evaluation of the third-party reports. (*See generally* Doc. 14 at 7-1)  However, the evidence remains relevant to the extent the ALJ cited the reports in support of her findings concerning Plaintiff's mental limitations.

**F.     The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined first that Plaintiff did not engage in substantial gainful activity after the application date of April 5, 2016.  (Doc. 10-3 at 18)  At step two, the ALJ found Plaintiff had "the following the severe impairments: lumbar degenerative disc disease, mild thoracolumbar stenosis, left shoulder degenerative joint disease, and tendinitis."  (*Id.*)  The ALJ noted Plaintiff also had "medically determinable mental impairments of major depressive disorder and posttraumatic stress disorder."  (*Id.*)  The ALJ found these impairments, "considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere."  (*Id.*)

At step three, the ALJ concluded Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing.  (Doc. 10-3 at 19) Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can lift and carry 20 pounds occasionally and 10 pound[s] frequently, and sit six to eight hours and stand and walk four hours in an eight-hour workday with a sit/stand option at will, but no more than hourly.  The claimant can occasionally stoop, crouch, crawl, climb, kneel, and balance; occasionally reach in any direction with the left upper extremity; and never climb ladders, ropes, or scaffolds.

(Doc. 10-3 at 20)  With these limitations, the ALJ found at step four that Plaintiff was "capable of performing past relevant work as an apartment manager."  (*Id.* at 23)  At step five, the ALJ made an "alternative finding" that determined "there are other jobs existing in the national economy that she is also able to perform."  (*Id.*)  Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  (*Id.* at 24)

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred at step two of the sequential evaluation in addressing the medical record related to the severity of her mental impairments.  (Doc. 14 at 11-14)  In addition, she contends the ALJ failed to address her mental impairments with the residual functional capacity and at step four of the evaluation.  (*See id.*)  Further, Plaintiff contends the ALJ erred in holding she can return to her past relevant work at step four, or perform other work in the national economy at step five.  (*Id.* at 7-11)

///

10

## A. Waiver

An ALJ is required to make credibility determinations in each decision, to determine whether a claimant's subjective complaints should be credited. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). The Ninth Circuit explained, "To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Id.* Here, the ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms" lacked credibility. (Doc. 10-3 at 20) Plaintiff does not address the ALJ's findings regarding the credibility of her subjective complaints in her opening brief.

The Ninth Circuit "has repeatedly admonished that [it] cannot 'manufacture arguments for an appellant.'" *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)). Rather, the Court will "review only issues with are argued specifically and distinctly." *Id.* Therefore, when a claim of error is not argued and explained, the argument is waived. *See, id.* at 929-30 (holding that party's argument was waived because the party made only a "bold assertion" of error, with "little if any analysis to assist the court in evaluating its legal challenge"); *see also Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (finding the assertion of error was "too undeveloped to be capable of assessment").

Because Plaintiff does not address the adverse credibility determination in her opening brief, any challenge to the credibility determination has been waived. *See Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (where a claimant failed to raise an argument in the opening brief, the Court deemed it waived); *Zango v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n. 8 (9th Cir. 2009) ("arguments not raised by a party in an opening brief are waived").

## B. Findings Related To Plaintiff's Mental Impairments

The inquiry at step two is a *de minimus* screening for severe impairments "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). The purpose is to identify claimants whose medical impairment makes it unlikely they would be disabled even if age, education, and experience are considered. *Bowen*, 482

U.S. at 153 (1987).  At step two, a claimant must make a "threshold showing" that (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Id*. at 146-47; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c).  Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment. *Id*.; *see also Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) ("The burden of proof is on the claimant at steps one through four...").

An impairment, or combination thereof, is "not severe" if the evidence establishes that it has "no more than a minimal effect on an individual's ability to do work."  *Smolen*, 80 F.3d at 1290.  For an impairment to be "severe," it must "significantly limit[]" the claimant's "ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities are "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1522(b), 416.922(b).  These activities include "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." *Id*.

### 1.    Rejection of limitations identified by Dr. Michiel

As an initial matter, the ALJ rejected the findings of Dr. Michiel, who addressed Plaintiff's ability "to relate to and interact with coworkers, supervisors, or the general public" and "carry out an extensive variety of technical and/or complex instructions."  (Doc. 10-3 at 22)

Plaintiff does not challenge the ALJ's rejection of the limitations identified by Dr. Michiel, or address the ALJ's reasons for doing so.  (*See generally* Doc. 14)  Accordingly, the Court finds any challenge to this has been waived.  *See Bray*, 554 F.3d at 1226 n.7 (where a claimant failed to raise an argument in the opening brief, the Court deemed it waived); *Zango*, 568 F.3d at 1177 n. 8 ("arguments not raised by a party in an opening brief are waived").

### 2.    Evaluation of the opinion of Dr. Thomas

Plaintiff argues the ALJ failed to address the opinion of Dr. Thomas in finding that her impairments were nonsevere, and argues "[t]he failure to address the opinions of Dr. Thomas explicitly constitutes error."  (Doc. 14 at 13, citing *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015).

Pursuant to the Regulations, "medical opinions are statements from acceptable medical sources

that reflect judgments about the nature and severity of [a claimant's] impairments, including [the] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and … physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1); 416.927(a)(1). Dr. Thomas indicated Plaintiff was diagnosed with "Major Depressive Disorder, Recurrent, Severe Without Psychotic Features and Post-traumatic Stress Disorder, Unspecified." (Doc. 10-10 at 22) She also indicated that Plaintiff had "issues with chronic pain and stress level" and believed Plaintiff's "recovery [would] likely exceed 12 months." (*Id.*) Beyond this, Dr. Thomas did not identify symptoms of Plaintiff's impairments, offer an opinion regarding the severity of her symptoms, state her opinions of Plaintiff's capabilities despite her impairments, or identify any mental limitations. (*See id.*) Instead, Dr. Thomas indicated she was "unable to provide a substantiated opinion on whether [she would] find Bonita fit for fulltime employment since disability assessment at the time of admission was not part of the treatment plan." (*Id.*)

Significantly, it is clear the ALJ considered the opinions found in the letter to counsel from Dr. Thomas, because the ALJ concluded Plaintiff had "medically determinable mental impairments of major depressive disorder and posttraumatic stress disorder." (*See* Doc. 10-3 at 18) Although the ALJ did not cite the letter from Dr. Thomas in support of these findings, no other physician made these diagnoses.[6] Thus, the ALJ adopted the diagnoses identified by Dr. Thomas and did not merely reject her opinion.

Moreover, Dr. Thomas did not offer any functional capacity assessment for consideration by the ALJ, which would could have been addressed in the ALJ's decision. The Ninth Circuit determined ALJ is not required to "discuss all evidence presented," though the ALJ has the burden to "explain why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984) (internal quotation marks omitted). Where a physician offers "no specific assessment of [the claimant's] functional capacity" during the adjudicated period, the ALJ may reject such evidence. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). Similarly, an ALJ may reject a physician's "reports [that] do not show how [the claimant's] symptoms translate into specific functional deficits

---

[6] Dr. Michiel acknowledged Plaintiff's depression, but diagnosed Plaintiff with "[d]epressive disorder not otherwise specified." (Doc. 10-9 at 54)

which preclude work activity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Consequently, this Court determined an ALJ does not err by not discussing evidence from treating physician's that does not offer an opinion regarding the claimant's limitations. *Haydostian v. Colvin*, 2016 U.S. Dist. LEXIS 86864, at *19-20 (E.D. Cal. July 5, 2016).

In *Haydostian,* the Court observed "the crux" of the claimant's argument was "the ALJ improperly evaluated the medical record because he failed to consider the treating physicians' opinions." *Id.*, 2016 U.S. Dist. LEXIS 86864, at *19. However, the Court found no "opinion" within the meaning of the Regulations, because the evidence from his treating physicians "offer[ed] no opinion concerning Plaintiff's actual ability to function." *Id.* Instead, the medical evidence identified only the symptoms and diagnosis, which were addressed by the ALJ in his opinion. *Id.* at *21-22.

Likewise, Dr. Thomas offered only the diagnoses for Plaintiff, and did not identify and mental limitations or restrictions. (*See* Doc. 10-10 at 22) Instead, she specifically declined to offer an opinion regarding Plaintiff's ability to function in a workplace because "disability assessment … was not part of the treatment plan" (*Id.*)

Because Dr. Thomas did not offer a "specific assessment" of Plaintiff's functional capacity or explain how the impairments "translate into specific functional deficits," the ALJ did not err by not addressing the remainder of the letter written by Dr. Thomas. *See Johnson*, 60 F.3d at 1432; *see also Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting a medical opinion that failed to explain the extent or significance of a condition); *Nottoli v. Astrue*, 2011 U.S. Dist. LEXIS 15850, at *8 (E.D. Cal. Feb. 16, 2011) (a medical diagnosis alone "does not demonstrate how that condition impacts plaintiff's ability to engage in basic work activities").

3. "Paragraph B" criteria[7]

The "Paragraph B" criteria set forth in 20 C.F.R., Pt. 404, Subpart P, App. 1 are used to evaluate the mental impairments of a claimant, and include the ability to: "[u]nderstand, remember, or apply

---

[7] Recent revisions to the Regulations regarding mental impairments, effective January 17, 2017, resulted in new paragraph B criteria. *See* 81 Fed. Reg. 66138-01, 2016 WL 5341732 at *661676 (Sept. 26, 2016). Thus, the Regulations in effect changed while Plaintiff's application was pending before the Social Security Administration. As the ALJ observed, Drs. Lawrence and Gilson—who reviewed the records in 2016— "evaluated [Plaintiff's] mental impairments using the B criteria set forth in [the] previous version of the listings." (Doc. 10-3 at 23) However, the ALJ applied the revised version of the Paragraph B criteria in her opinion. (*See id.* at 19, 23)

14

information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."

*See id.*, §12.00(A)(2)(b) (2018). The Regulations inform claimants:

> If we rate the degrees of your limitation as "none" or "mild," we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.

20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1). Here, the ALJ found Plaintiff's "medically determinable mental impairments of major depressive disorder and posttraumatic stress disorder… cause no more than 'mild' limitation in any of the functional areas." (Doc. 10-3 at 18-19) As a result, the ALJ concluded Plaintiff's mental impairments "are non-severe." (*Id.* at 19)

Notably, Plaintiff does not specifically challenge the ALJ's findings at step two regarding the severity of her mental impairments. (*See* Doc. 14 at 12-13) She asserts that "[t]he opinions provided by Dr. Thomas and Dr. Michiel do not permit the inference of a nonsevere mental impairment…" (*Id.* at 13) In addition, Plaintiff contends the opinions the ALJ relied upon did not address all relevant evidence related to the severity of her mental impairments, including her "slight latency in speech or the presence of only fair eye contact." (Doc. 16 at 6) Accordingly, the Court must review the ALJ's findings regarding the severity of the impairments with the Paragraph B criteria.

### a. Claimant's burden

It is undisputed that the ALJ determined Plaintiff suffered from medically determinable mental impairments. As noted above, however, Plaintiff had the burden to establish not only that she suffered from these impairments, but also the impairments were *severe*. *See Bowen*, 482 U.S. at 146-147; 20 C.F.R. §§ 404.1520(c), 416.920(c). The Ninth Circuit explained: "The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).

### b. Ability to understand, remember, or apply information

As explained by the Regulations, "[t]his area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities." 20 C.F.R., Pt. 404, Subpart P, App. 1, §12.00(E)(1) (2018). Examples of such abilities include "[u]nderstanding and learning terms, instructions, [and] procedures," and "following one-or two-step oral instructions to carry out a task." (*Id.*) In addition, the Commissioner may consider whether a claimant can use "reason and judgment to make work-related decisions." (*Id.*)

The ALJ found Plaintiff had "no more than a mild restriction in understanding, remembering, or applying information." (Doc. 10-3 at 19) The ALJ noted Plaintiff was able to drive, shop online, take care of her personal hygiene, and handle finances. (*Id.*) The ALJ also observed that during the consultative examination with Dr. Michiel, Plaintiff was "able to do digit span give out of five forward and backwards correctly, and she appeared able to do simple math calculations." (*Id.* at 22) Further, the ALJ noted Plaintiff's "judgment was intact," and Dr. Michiel opined Plaintiff could "carry out simple job instructions." (*Id.* at 22)

Given the evidence concerning Plaintiff's abilities and activities identified by the ALJ in her opinion—and Plaintiff's failure to either challenge this Paragraph B domain or identify any objective medical evidence to the contrary—the Court finds the ALJ did not err in finding Plaintiff had only a mild restriction with her ability to understand, remember, or apply information.[8]

>            *c.*    *Interacting with others*

This domain "refers to the abilities to relate to and work with supervisors, coworkers, and the public." 20 C.F.R., Pt. 404, Subpart P, App. 1, §12.00(E)(2) (2018). Examples of such abilities include, but are not limited to, "[c]ooperating with others;" "asking for help when needed;" and "understanding and responding to social cues (physical, verbal [and] emotional)." (*Id.*) In addition, the Commissioner may consider whether a claimant can use "reason and judgment to make work-related decisions." (*Id.*)

The ALJ noted Plaintiff "testified that she does not have many friends and she stays to herself," yet "three friends submitted third party statements." (Doc. 10-3 at 19) In addition, the ALJ observed that Plaintiff reported she "was able to cook and do household chores with help from a friend." (*Id.*, citing Exh. 3F, p. 3 [Doc. 10-9 at 53]). The ALJ also noted Drs. Gilson and Lawrence concluded Plaintiff's mental impairments "caused a mild restriction in her… social functioning" while addressing

---

[8] Addressing the former Paragraph B domains, this Court determined an ALJ did not err in finding a claimant had mild restrictions where the claimant was able to "attend to his personal hygiene," drive, attend church, perform light housekeeping chores, handled his own bills and money. *Ivy v. Comm'r of Soc. Sec.*, 2011 WL 2038579 at *10, 12 (E.D. Cal. May 24, 2011). Plaintiff's ability to perform similar activities supports the ALJ's conclusion that she does not have "more than 'mild'" limitation."

the prior Paragraph B criteria.[9]  (*Id.* at 10-3 at 22, citing Exh. 1A, p. 7, Exh. 3A, p. 7 [Doc. 10-4 at 8, 22])  As the ALJ noted, Drs. Lawrence and Gilson noted that Plaintiff "interacted in an appropriate and cooperative fashion" with Dr. Michiel and indicated she was "nice to authority figures, has friends who come to visit her, [and] goes out with a friend."  (Doc. 10-4 at 8, 22)

Defendant argues the opinions of Drs. Lawrence and Gilson are substantial evidence in support of the ALJ's conclusions and asserts that "Plaintiff concedes the propriety of the two psychological consultants' findings by failing to challenge them." (Doc. 15 at 13-14)  In response, Plaintiff argues this is error because "Dr. Lawrence did not consider the slight latency in speech or the presence of only fair eye contact" identified by Dr. Michiel during the consultative examination.  (Doc. 16 at 7; *see also* Doc. 10-9 at 54)  Specifically, Dr. Michiel noted Plaintiff "kept fair eye contact throughout the interview" and her "[s]peech was normal in process with slight latency."  (Doc. 10-9 at 54)

The Court is unable to find the evidence identified by Plaintiff in her reply brief demonstrates the ALJ erred in finding she has mild limitation with this domain. Under the Regulations, when a claimant is "slightly limited," this points to a "mild limitation" under the Paragraph B five-point rating scale, while "fair" functioning points to a "moderate" limitation on the scale.  *See* 20 C.F.R., Pt. 404, Subpart P, App. 1, §12.00(F)(2)(b)-(c).  With this scale, Plaintiff's "slight latency" of speech—which Dr. Michiel also described as "normal in process"—points to a mild limitation, as the ALJ concluded. On the other hand, her "fair" eye contact points to a "moderate" limitation.  *See id.*, §12.00(F)(2)(c).

The ALJ acknowledged Plaintiff "kept fair eye contact" during the examination but also observed that Plaintiff "was able to act appropriately" at the hearing.[10]  (Doc. 10-3 at 22)  This is consistent with the observations of Drs. Lawrence and Gilson that Plaintiff "interacted in an appropriate and cooperative fashion" with Dr. Michiel.  (*See* Doc. 10-4 at 8, 22)  Furthermore, the ALJ relied upon the opinions of Drs. Lawrence and Gilson that Plaintiff had only mild limitations within this domain. *See Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (holding the opinion of a non-

---

[9] Under the prior Paragraph B criteria, the domain of "social functioning" addressed a claimant's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals."  *See Arroyo v. Astrue,* 2010 U.S. Dist. LEXIS 120478 (E.D. Cal. Oct. 28, 2010).

[10] The Ninth Circuit determined "[t]he inclusion of the ALJ's personal observations does not render [a] decision improper." *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999).  An ALJ may use personal observations when evaluating the merits of a claimant's complaints. *See Thomas,* 278 F.3d at 960; SSR 96-7p ("the adjudicator is not free to accept or reject the individual's complaints solely on the basis of such personal observations, but should consider any personal observations in the overall evaluation of the credibility of the individual's statements").

examining physician "may constitute substantial evidence when it is consistent with other independent evidence in the record").

### d. Concentration, persistence, or pace

In reviewing the third functional area of the Paragraph B criteria, the ALJ again found Plaintiff has "no more than mild limitation." (Doc. 10-3 at 19) The ALJ noted Ms. Gallo reported that Plaintiff "could follow written and spoken instructions well (Exhibit 5E)." (*Id.* at 22) The ALJ noted also that Dr. Michiel found Plaintiff "was able to maintain attention and concentration to carry out simple job instructions," and Drs. Lawrence and Gilson concluded Plaintiff's "mental impairment caused a mild restriction in her … concentration, persistence, and pace." (*Id.*, citing Exh. 1A, p. 7, Exh. 3A, p. 7 [Doc. 10-4 at 8, 22]) According to the ALJ, Plaintiff was also "able to pay attention and answer questions appropriately at the hearing." (*Id.*)

Plaintiff does not challenge the evidence identified by the ALJ, and the ALJ's conclusion is supported by substantial evidence in the record. *See Tonapetyan,* 242 F.3d at 1149 (holding the opinion of a non-examining physician "may constitute substantial evidence when it is consistent with other independent evidence in the record").

### e. Adapt or manage oneself

This domain addresses the "abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R., Pt. 404, Subpart P, App. 1, §12.00(E)(4). The Regulations identify examples such as "making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions." *Id.* Consequently, an ALJ may consider evidence related to a claimant's appearance at an examination, hygiene, behavior, perception, thoughts, orientation, and memory. *See Covell v. Berryhill,* 2019 WL 78995, at *10; 2019 U.S. Dist. LEXIS 125 (D. Mass. Jan. 2, 2019); *see also Icobucci v. Berryhill*, 2018 U.S. Dist. LEXIS 96076, at *5 (W.D.N.Y. June 7, 2018) (finding the claimant did "not have… deficits in adaptive functioning" where the plaintiff as able to clean, shop, take care of her daughter, and "[the] plaintiff stated that she could perform her own personal needs, follow directions, and can take standardized measures of intellectual functioning testing").

At step two, the ALJ observed that Plaintiff reported "she was able to take care of her personal hygiene, and was able to cook and do household chores with help from a friend." (Doc. 10-3 at 19, citing Exh. 3F, p. 3 [Doc. 10-9 at 53]) The ALJ also noted Ms. Gallo indicated Plaintiff "was able to drive, shop online, and "handle her finances." (*Id.*, citing Exh. 5E, p. 6 [Doc. 10-8 at 32]) In addition, as found by Dr. Michiel, the ALJ noted Plaintiff's "remote memory was intact," her "fund of knowledge was normal, her judgment was intact, and her abstract thinking was not concrete." (*Id.* at 22, citing Exh. 3F, p. 4 [Doc. 10-9 at 54]) This evidence identified by the ALJ supports her conclusions that Plaintiff had "no more than mild" restriction with this domain (*id.* at 19) and that Plaintiff's "mental symptoms are not severe" (*id.* at 22). *See Covell,* 2019 WL 78995, at *10; *Icobucci,* 2018 U.S. Dist. LEXIS 96076, at *5; *see also Ivy v. Comm'r of Soc. Sec.*, 2011 WL 2038579 at *10, 12 (E.D. Cal. May 24, 2011) (addressing the prior Paragraph B domains, and finding an ALJ did not err in finding a claimant had mild restrictions where the claimant was able to "attend to his personal hygiene," drive, attend church, perform light housekeeping chores, and handle his own bills and money).

### 4. Substantial evidence supports the ALJ's nonseverity finding

"The role of this Court is not to second guess the ALJ and reevaluate the evidence, but rather it must determine whether the decision is supported by substantial evidence and free of legal error." *Gallardo v. Astrue*, 2008 WL 4183985 at *11 (E.D. Cal. Sept. 10, 2018); *see also German v. Comm'r of Soc. Sec.*, 2011 WL 924737 at *3 (E.D. Cal. Mar. 14, 2011) ("[i]t is not for this court to reevaluate the evidence"). The term "substantial evidence" "describes a quality of evidence ... intended to indicate that the evidence that is inconsistent with the opinion need not prove by a preponderance that the opinion is wrong." SSR 96-2p, 1996 SSR LEXIS 9 at *8[11]. "It need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.*

---

[11] Social Security Rulings (SSR) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, the Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

The ALJ's conclusions regarding the Paragraph B criteria are supported not only by Plaintiff's self-reports regarding her abilities and activities but also the opinions of Drs. Lawrence and Gilson, who "opined that the claimant's mental impairment was not severe." (*See* Doc. 10-3 at 23) Specifically, Drs. Lawrence and Gilson concluded that Plaintiff had mild restrictions with her activities of daily living; no difficulties with maintaining social functioning; and mild difficulties with maintaining concentration, persistence, and pace. (Doc. 10-4 at 7-8, 21-22) Because the physicians concluded the limitations in these three functional limitations were "mild," they concluded Plaintiff's impairment were "non-severe." (*See id.* at 39; 20 C.F.R. § 404.1520a(d)(1)) Significantly, Plaintiff does not challenge the ALJ's evaluation of these opinions in her opening brief, and these opinions constitute substantial evidence. *See Tonapetyan*, 242 F.3d at 1149; *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995); *see also* 20 C.F.R. §§ 404.1513(c) (findings by state agency physicians constitute proper evidence from non-examining sources); SSR 96-6p, 1996 SSR LEXIS 3 ("State agency medical . . . consultants are highly qualified physicians . . . who are experts in the evaluation of the medical issues in disability claims").

Moreover, the ALJ's adverse credibility finding—which Plaintiff did not challenge— supports the finding that her mental impairments are not severe. *See Lomas v. Colvin*, 2014 WL 6775762, at *4-5 (C.D. Cal. Dec. 2, 2014) (holding "[t]he ALJ's adverse credibility finding … further supports the mental nonseverity finding").

**C.     Nonsevere Impairments with the RFC**

Plaintiff argues the ALJ's finding that her mental impairments were not severe "does not excuse the ALJ from considering the presence of a mild impairment on the ability to perform skilled work." (Doc. 14 at 12 citing 20 C.F.R. 416.923) In support of this, Plaintiff cites 20 C.F.R. 416.923, which indicates the Commissioner will "consider [the] combined impact of all impairments, even those that do not rise to the level of severe." (*Id.*)

Pursuant to the Regulations, between steps three and four of the sequential analysis, the ALJ is required to assess all of the claimant's impairments—including those that are not "severe"—in combination as part of the residual functional capacity ("RFC") determination. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) (2018). In addition, the Regulations state:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. 416.923(c) (2018).  Likewise, SSR 96-8p indicates:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, 1996 SSR LEXIS 5, at *14-15 (July 2, 1996)." Thus, a claimant's RFC is "the most [a claimant] can still do," despite all limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs").

The ALJ considered Plaintiff's mental impairments in formulating the RFC.  Between steps three and four of the sequential analysis, the ALJ reviewed the medical record related to Plaintiff's mental impairments, including the findings of Dr. Michiel and the psychological evaluations by Drs. Lawrence and Gilson.  (*See* Doc. 10-3 at 21-22)  The ALJ noted she rejected only the findings of the psychological consultants related to episodes of decompensation (*id.*)—and such findings were notably no longer relevant under the new Paragraph B criteria.

Furthermore, the ALJ specifically indicated that the "the residual functional capacity assessment reflects the degree of limitation … found in the 'paragraph B' mental function analysis." (Doc. 10-3 at 19) When an ALJ performs the Paragraph B analysis and indicates the "degree of limitation" is incorporated into the RFC, this is sufficient to carry the burden imposed by the Regulations.  *See Ming Y. Huang v. Berryhill*, 2017 WL 6557757, at *8- 9(S.D. Cal. Dec. 22, 2017) (rejecting the plaintiff's argument that "the ALJ erred by not including her mild mental limitations… in [the] residual functional capacity" where the ALJ reviewed the Paragraph B criteria "and expressly incorporated [the] mild mental limitations into the RFC"), adopted in 2018 WL 480806; *Scotellaro v.*

*Colvin*, 2015 WL 4275970 at *9 (D. Nev. June 22, 2015) (finding "the ALJ considered Plaintiff's mild mental limitation in his RFC analysis where the ALJ analyzed the Paragraph B criteria "at step two and incorporated by reference in his RFC analysis").

The ALJ made an affirmative finding that Plaintiff's mental impairments were nonsevere, which was supported by substantial evidence in the record. The omission of mental limitations from the RFC does not indicate the mental impairments were not considered, but rather reflects the conclusion that the impairments would not interfere with Plaintiff's ability to perform basic work activities. Consequently, the Court finds Plaintiff fails to show the ALJ did not adequately consider her mental impairments with the RFC. *See Scotellaro*, 2015 WL 4275970 at *9; *Stinnett v. Berryhill*, 2017 U.S. Dist. LEXIS 59137 at *7-9 (N.D. Tex. Mar. 31, 2017); *Dray v. Astrue*, 353 Fed. Appx. 147, 150-51 (10th Cir. 2009) (evidence of mild mental impairments did not contradict ALJ's RFC determination omitting any limitations related to mental impairments).

**D.      Use of the VE Testimony and The ALJ's Step Four determination**

At step four, a claimant has the burden of proof to establish that she cannot perform her past relevant work "either as actually performed or as generally performed in the national economy." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). Past relevant work is work performed in the last 15 years that lasted long enough to learn it, and was substantial gainful employment. SSR 82-61, 1982 SSR LEXIS 31. The ALJ is not required to make "explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). Nevertheless, the Ninth Circuit explained that "the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Id.*, 249 F.3d at 844.

The Social Security Administration has set forth three tests for an ALJ to determine whether a claimant retains the capacity for past relevant work, including:

1.  Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packing job," etc.

2.  Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.

3.  Whether the claimant retains the capacity to perform the functional demands the job duties of the job as ordinarily required by employers throughout the national economy.

SSR 82-61, 1982 SSR LEXIS 31, at *2-3.

    1.    VE's testimony

An ALJ may call a vocational expert "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).  When eliciting testimony from a vocational expert, the ALJ must set forth "hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration."  *Id.* (quoting *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)).

    *a.*    *Mental limitations and the hypothetical questions presented*

Only limitations supported by substantial evidence must be included in hypothetical questions presented to vocational experts. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).  An ALJ need not include "any impairments that the ALJ has properly rejected."  *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002).  Thus, where an ALJ finds mild mental impairments are adequately addressed in an RFC that omits mental limitations, the hypothetical questions posed to the vocational expert need not include mental limitations.  *See Huang,* 2017 WL 6557757, at *10; *Bias v. Astrue*, 484 Fed. Appx. 275, 276 (10th Cir. 2012) (holding that where substantial evidence supports an ALJ's finding that there are no work-related limitations related to a nonsevere mental impairment, "the ALJ is not required to include that impairment in his hypothetical").

Because the ALJ's findings regarding Plaintiff's nonsevere limitations and the RFC were supported by the record, as discussed above, the ALJ did not need to include mental limitations in the hypothetical questions posed to the vocational expert, Plaintiff is unable to show any reversible error on these grounds. *See Huang,* 2017 WL 6557757, at *10; *Bias v. Astrue*, 484 Fed. Appx. at 276.

    *b.*    *Testimony concerning Plaintiff's past relevant work*

The ALJ asked the VE to consider an individual with the physical limitations identified in the RFC, which were unchallenged by Plaintiff.  Specifically, with the third hypothetical question, the ALJ asked the VE to consider an individual who "could lift and carry 20 pounds occasionally, ten pounds frequently;" sit for six to eight hours; stand and walk for four hours; needed "a sit/stand option where

they're changing at will, but no more than hourly;" and could occasionally stoop, crouch, crawl, climb, kneel and balance." (Doc. 10-3 at 50-51)  In addition, the ALJ indicated the hypothetical person was limited to "occasional reaching in any direction with the upper left extremity, which is the non-dominant." (*Id.* at 51)  In response, the VE responded Plaintiff's past work as an apartment manager "would still remain" because "she can do that job with, primarily with her dominant hand." (*Id.*)\

2.     Plaintiff's work as an apartment manager

The ALJ concluded Plaintiff was "capable of performing [her] past relevant work as an apartment manager," which was identified as DOT 186.167-018, "as actually and generally performed." (Doc. 10-3 at 34) Plaintiff contends the ALJ erred in finding she is able to perform this work because "[n]othing in the record suggests Van Houten performed work as an apartment manager primarily with her left hand or anything other than bilaterally." (Doc. 14 at 8)  Defendant argues that "Plaintiff's contention lacks merit." (Doc. 15 at 7)

a.     As "actually" performed

To determine how a claimant actually performed her work, an ALJ may consider: (1) the claimant's own testimony, and (2) a claimant's vocational report. *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002), citing *Pinto*, 249 F.3d at 845; *see also* SSR 82-62, 1982 SSR LEXIS 27, at * 6-7 ("statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work").

Plaintiff observes that she "described her work as performing the leasing functions, showing apartments, and doing paperwork." (Doc. 14 at 8)  She also points to her testimony at the hearing that she "took 'rent and stuff' from existing tenants." (*Id.*)  It appears Plaintiff argues this evidence is contrary to the VE's testimony that she can perform her past relevant work with a non-dominant hand. However, she fails to identify any evidence that such tasks required *reaching* in excess of the limitations identified by the ALJ and addressed by the VE—whether with one hand or two.

Indeed, other evidence in the record from Plaintiff indicates that her job, as she performed it, required her to reach for "0" hours each day. (Doc. 10-8 at 8)  In the Disability Report – Form SSA 3368, Plaintiff noted that each day she was required to walk four hours, stand for six hours, sit for four hours, and climb for two hours. (*Id.*)  In addition, she indicated she had to write, type, or handle small

24

objects for six hours; and she spent "0" hours on tasks that required reaching.  (*Id.*)

Given the unambiguous evidence from Plaintiff concerning the physical requirements of the apartment manager position as she performed it—indicating tasks did not require her to "reach"—she fails to carry the burden to demonstrate that the RFC renders her unable to perform the work of an apartment manager as actually performed.  *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (the claimant's description of her past work, including the sitting and standing requirements, was "highly probative" and supported the ALJ's finding that she could perform to that work).  The VE's testimony that she can perform this work also supports the ALJ's conclusion.

### b.    As "generally" performed

A claimant is not disabled if she can perform her past work as she actually performed it, *or* if she can perform the past work as generally performed. SSR 82-61, 1982 SSR LEXIS 31; *Johnson v. Colvin*, 623 F. App'x 326, 327 (9th Cir. 2015) ("[a]n ALJ can find the claimant not disabled at step four by finding *either* that the claimant retains the capacity 'to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it' or the job as ordinarily required by employers throughout the national economy.'") (emphasis in original)

Because the ALJ's findings regarding Plaintiff's ability to perform the work as actually performed are supported by substantial evidence in the record—including Plaintiff's own report concerning her vocational history and the VE's testimony—the Court declines to address whether she can also perform the work as generally performed in the national economy.  *See Johnson*, 623 F. App'x at 327.

### c.    End of the inquiry

When an ALJ determines at step four that a claimant can perform her past relevant work, the inquiry ends. 20 C.F.R. §§ 404.1520(a); 416.920(a). Because the Court finds the ALJ's step four conclusion was proper, it does not address the arguments raised concerning the ALJ's alternate findings at step five. *See, e.g., Becerra v. Comm'r of Soc. Sec.*, 2016 U.S. Dist. LEXIS 180498 (E.D. Cal. Dec. 30, 2016) (upon finding the ALJ's step four conclusion should be affirmed, "the court decline[d] to reach plaintiff's arguments with respect to the ALJ's alternative step five determination"); *McAnally v. Astrue*, 241 Fed.Appx. 515, 518 (10th Cir. 2007) (declining "to consider

plaintiff's step five arguments" where the court affirmed the "finding of nondisability at step four of the evaluation process").

**CONCLUSION AND ORDER**

For the reasons set forth above, the Court finds the ALJ applied the proper legal standards and the decision is supported by substantial evidence in the record. Accordingly, the Court must uphold the ALJ's conclusion that Plaintiff is not disabled as defined by the Social Security Act. *See Sanchez*, 812 F.2d at 510.

Based upon the foregoing, the Court **ORDERS**:

1.    The decision of the Commissioner of Social Security is **AFFIRMED**; and

2.    The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Benita Van Houten.

IT IS SO ORDERED.

Dated:   **February 15, 2019**                     **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE